Matter of Peterkin v New York State Dept. of Corr. & Community Supervision (2025 NY Slip Op 03617)

Matter of Peterkin v New York State Dept. of Corr. & Community Supervision

2025 NY Slip Op 03617

Decided on June 12, 2025

Appellate Division, Third Department

Pritzker, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 12, 2025

CV-24-0895

[*1]In the Matter of Nashane Peterkin, Petitioner,
v
New York State Department of Corrections and Community Supervision et al., Respondents.

Calendar Date:April 30, 2025

Before: Pritzker, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Roger V. Archibald, PLLC, Brooklyn (Roger V. Archibald of counsel), for petitioner.
Letitia James, Attorney General, Albany (Rachel Raimondi of counsel), for respondents.

Pritzker, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Corrections and Community Supervision denying petitioner's application to reconsider a prior determination finding petitioner guilty of violating certain prison disciplinary rules.
Petitioner was charged in a misbehavior report with violent conduct and assault on staff. According to the report, which was authored by a correction sergeant involved in the incident, while petitioner was being strip frisked prior to admission to a one-on-one mental health watch, he punched a correction officer in the face. During the ensuing efforts to restrain him, petitioner again struck that officer in the face with his elbow and assaulted another correction sergeant by biting his thumb. Following a tier III disciplinary hearing, petitioner was found guilty of the charges and a penalty was imposed that included, among other things, approximately four years in the special housing unit (hereinafter SHU). The Superintendent of Auburn Correctional Facility, where the incident occurred, reviewed and upheld the confinement sanction on July 21, 2023, finding that petitioner had committed a heinous act by assaulting staff and attempting to take the life of one of the sergeants (see 7 NYCRR 254.9). The Acting Director of Special Housing/Incarcerated Individual Disciplinary Programs, on behalf of respondent Commissioner of Corrections and Community Supervision, reviewed the disciplinary disposition and reduced the SHU penalty to 730 days, also by decision dated July 21, 2023 (see 7 NYCRR 254.8 [b]).[FN1] In response to a request from petitioner through counsel challenging the determination and penalty, the Commissioner concluded that there were insufficient grounds to reconsider the determination. This CPLR article 78 proceeding ensued.
Our review of the record satisfies us that the misbehavior report, surveillance videos of the incident played at the hearing, the detailed use of force, injury and unusual incident reports, memoranda summarizing the incident and the medical reports and other documentary evidence provide substantial evidence to support the determination of guilt (see Matter of Keitt v Annucci, 231 AD3d 1455, 1456 [3d Dept 2024]; Matter of Mills v Annucci, 225 AD3d 1050, 1051 [3d Dept 2024]). Petitioner's contrary account that he acted in self-defense after the officers initiated the altercation was unsupported by any evidence and presented a credibility issue for the Hearing Officer to resolve (see Matter of Hernandez v Martuscello, 234 AD3d 1201, 1201 [3d Dept 2025]). The record reflects that the Hearing Officer played the surveillance video during the hearing and does not support petitioner's claim, raised for the first time on appeal, that the audio portion of the recording was not played or considered.
Petitioner's procedural claims are without merit. Petitioner received but did not [*2]complete the employee assistance form prior to the hearing; at the outset of the hearing, the Hearing Officer adjourned the proceedings to permit him to request and confer with an assistant, which he did the following day, completing the relevant forms. When the hearing resumed days later, petitioner did not raise any objections to the assistance provided or make any related requests. As such, petitioner was not denied his right to request and receive employee assistance prior to the hearing (see 7 NYCRR 251-4.1 [a] [3]).
Petitioner further alleges that he was prejudiced in that he did not receive a written copy of the disposition within 24 hours of the conclusion of the hearing, as required (see 7 NYCRR 254.7 [a] [2]). However, "[t]he Hearing Officer read the written disposition into the record at the conclusion of the hearing, and the deficiency was cured by petitioner's receipt of a copy of the written disposition [six days after the hearing concluded] and he has not demonstrated that he was prejudiced" by the delay or prevented from filing an administrative appeal (Matter of Peters v Annucci, 227 AD3d 1312, 1313 [3d Dept 2024] [internal quotation marks, brackets and citation omitted]; see Matter of Eleby v New York State Dept. of Corr. & Community Supervision, 224 AD3d 977, 978-979 [3d Dept 2024]). Further, through counsel's letter seeking reconsideration, petitioner raised challenges to the determination and penalty, affording him a second administrative opportunity to challenge the disposition (see Matter of Clark v Jordan, 212 AD3d 976, 978 [3d Dept 2023]).
Finally, we review whether the sanction imposed by the Hearing Officer and subsequently administratively reduced violates the Humane Alternatives to Long-Term Solitary Confinement Act (hereinafter the HALT Act) (Correction Law § 137 [6] [i] [i], [ii], as amended by L 2021, ch 93).[FN2] The reduced penalty included 730 days of confinement in SHU, now known as segregated confinement.[FN3] The HALT Act, as relevant here, imposes specific limits regarding the placement of incarcerated individuals in segregated and other forms of confinement (see Correction Law § 137 [6] [i] [i]; [k]; Matter of Smith v Annucci, 232 AD3d 1014, 1015 [3d Dept 2024]; see also 7 NYCRR 301.2 [a] [1]). Under the HALT Act, "[o]nce the statutory maximum time in segregated confinement is reached, the person must either be released from segregated confinement or diverted to a separate residential rehabilitation unit [(hereinafter RRU)] for the duration of the assessed penalty" (Matter of Smith v Annucci, 232 AD3d at 1015, citing Correction Law § 137 [6] [i] [i]; [m] [i]).
The Attorney General has represented to this Court that petitioner "served his pre-hearing confinement and the initial period of the post-hearing sanction (from July 10, 2023 to August 4, 2023) in a mental health unit, and the remainder of the post-hearing sanction in a[n] [RRU] . . . [until] August 2, 2024."[FN4] Further, as a result of a decision in a class [*3]action lawsuit challenging the failure of respondent Department of Corrections and Community Supervision (hereinafter DOCCS) to comply with the mandates of the HALT Act and adoption of polices that conflict with said Act (see Fields v Martuscello, Sup Ct, Albany County, Sept. 12, 2023, Bryant, J., index No. 902997-23), the Attorney General indicates that petitioner's institutional records were amended to reflect a confinement sanction consistent with that permitted by the HALT Act. The Attorney General does not dispute that the segregated confinement penalty as handed down and subsequently reduced failed to comply with the requirements of the HALT Act. Nevertheless, the Attorney General contends that, inasmuch as petitioner has completed his confinement penalty and has received all of the relief to which he is entitled, his challenge to the confinement sanction is moot. We agree that since petitioner has completed his penalty and his institutional records have been amended to correct the penalty with regard to the period of segregated confinement, his challenge to the penalty is moot (see Matter of Coggins v Rodriguez, 236 AD3d 1285, 1287 [3d Dept 2025]; compare Matter of Walker v Commissioner, N.Y. State Dept. of Corr. & Community Supervision, ___ AD3d ___, ___, 2025 NY Slip Op 02834, *2 [3d Dept 2025]). However, the exception to the mootness doctrine is applicable given that issues pertaining to impermissible periods of segregated confinement and violations of HALT Act provisions are likely to be repeated, typically evade review and present "significant [and] important questions not previously passed on" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]).[FN5]

In this vein, to determine whether the imposed sanction violates the HALT Act, we must first review the limitations on segregated confinement for prison disciplinary violations as set forth in the Act, our first such occasion to interpret the limitations. As the Attorney General's office agreed at oral argument, pursuant to Correction Law § 137 (6) (k) (i), DOCCS "may place a person in segregated confinement for up to three consecutive days and no longer than six days in any [30-]day period if, pursuant to an evidentiary hearing, it determines that the person violated [DOCCS] rules which permit a penalty of segregated confinement. [DOCCS] may not place a person in segregated confinement for longer than three consecutive days or six days total in a [30-]day period unless the provisions of subparagraph (ii) . . . are met."[FN6] Correction Law § 137 (6) (k) (ii) provides that DOCCS "may place a person in segregated confinement beyond the limits of subparagraph (i) . . . or in [an RRU] only if, pursuant to an evidentiary hearing, it determines by written decision that the person committed one of [certain statutorily provided] acts and if the [C]ommissioner or his or her designee determines in writing based on specific objective criteria the acts were so heinous or destructive that placement [*4]of the individual in general population housing creates a significant risk of imminent serious physical injury to staff or other incarcerated persons, and creates an unreasonable risk to the security of the facility." Although Correction Law § 137 (6) (k) (ii) does not contain a specific temporal limitation, this can be found in Correction Law § 137 (6) (i) (i), which provides, with certain exceptions, that "[n]o person may be placed in segregated confinement for longer than necessary and no more than [15] consecutive days. Nor shall any person be placed in segregated confinement for more than [20] total days within any [60-]day period." Given these limitations, we find that not only the penalty imposed by the Hearing Officer, but also the reduced penalty of 730 days in SHU, violates the HALT Act.
It is DOCCS's position that hearing officers can continue to impose sanctions beyond the limits set forth in the HALT Act as long as incarcerated individuals are not actually "placed" in segregated confinement in excess of those limits. We disagree. While DOCCS takes the position that the hearing officers are "recommending" maximum penalties, this is not consistent with 7 NYCRR 254.7 (a) (1) (iii), which specifically states that hearing officers "impose . . . penalties" which include "segregated confinement for a specified period." The fact that a particular penalty is subject to further review is irrelevant (see generally Trifano v Colonie, 31 AD3d 821 [3d Dept 2006]). Simply stated, hearing officers have no authority to disregard the HALT Act's statutory limitations and requirements by substituting their own judgment and imposing penalties beyond those which the law allows — for whatever reason. Moreover, the fact that the HALT Act refers to "plac[ing]" an incarcerated individual in segregated confinement does not provide authority for a hearing officer to disregard these limitations in setting penalties (Correction Law § 137 [6] [k] [i]; see 7 NYCRR 254.1). To the extent this unlawful practice is continuing, it must cease.
Lynch, Ceresia, McShan and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The prehearing SHU penalty was reduced from 13 to 11 days.

Footnote 2: The parties did not initially address the question of whether the imposed penalty violated the HALT Act or advise this Court as to how long or where petitioner actually served such confinement. Pursuant to this Court's request, the parties provided supplemental briefing on these issues.
Footnote 3: The HALT Act defines "[s]egregated confinement" as "the confinement of an incarcerated individual in any form of cell confinement for more than [17] hours a day" (Correction Law § 2 [23]).

Footnote 4: Petitioner contends that he "remained in segregated confinement continuously for approximately one year since July 20, 2023," but without specific details of precisely where he was confined.

Footnote 5:Significant to our analysis of whether the exception to the mootness doctrine applies is the assertion by the Attorney General's office at oral argument that DOCCS is taking the position that hearing officers impose "maximum recommendation[s] that the hearing officer believes somebody should serve on the penalty," which can be over and above the limitations set forth in the HALT Act, despite our prior admonition regarding assessing penalties with periods of segregated confinement above statutory maximum time limits — or without making the necessary findings under Correction Law § 137 (6) (k) (ii) (see Matter of Smith v Annucci, 232 AD3d at 1015).
Footnote 6: In this Court's prior decision, Matter of Smith v Annucci, we stated generally that, "pursuant to the [HALT Act], '[n]o person may be placed in segregated confinement for
. . . more than [15] consecutive days'" (232 AD3d at 1015, quoting Correction Law § 137 [6] [i] [i]). To the extent that this statement can be read as an interpretation that the HALT Act imposes a "15-day rule," we now clarify the proper interpretation of the statutory limitations on segregated confinement.